We'll hear the last case for argument, which is United States v. Calkins. Good morning. Good morning. Please report. My name is Mark Picker. I represent Russell Calkins. I'm the defendant and the underlying action of the felon here. Briefly, because this is a short one, it doesn't involve any discovery disputes. I'm sure you're happy about that at this point. Good old criminal cases. There are three arguments that I just want to briefly touch on, and then I'll reserve the rest of my time. The first is that in their reply, in their answering brief, the government has argued that Mr. Calkins can't appeal because of the plea agreement, the language of the plea agreement. But here the court, the district court, recognized that there was an appellate issue and that there was a legal issue to be considered by this court. They granted a stay of the restitution order in order for this court to be able to review it. Well, can I ask you, you waive, your client waives appeal, but then you say, oh, there's a legal issue, and you've got some authority to support that. But isn't every appeal a legal issue? When does an appeal not involve a legal issue? Well, one would hope that one doesn't, that somebody doesn't. What's that? One would hope that somebody doesn't appear here without a legal issue, Your Honor. I agree with that. That's right. I mean, and so what does this waiver of appeal mean? Well, and that's obviously a real question here. But specifically, I think the government has agreed with us that despite the language that's in there, that it's designed to look at specifically issues related to things that fall outside of what are the recommendations of the sentencing guidelines or things that are factually incorrect within things that the parties have agreed to. Here, this issue in this case for Mr. Calkins is a legal issue because it applies, first of all, to whether there's a legal standard that restitution could have been even awarded in this case or ordered to be paid in this case. And second of all, the basis for what that restitution could be. And those legal standards were not contemplated within the contract between the parties. What did you waive? What did you waive? To dispute the amount? What we waived, Your Honor, was the sentence. What we waived was in respect to the sentence and the fact that the Court could consider restitution as it related specifically to, and I referred to the excerpt at page 6, to what would be appropriate to the owners of the facilities for the cost of cleanup. And that is language, of course, drafted by the government because it's the government's plea agreement. And if we go back to contract law, which we would necessarily do here, then that's going to be to some extent. It seems to me your client knew he was going to have to pay restitution. It was just a question of how much. Actually, that's incorrect, Your Honor. In our discussions, and this isn't, and factually we've related a lot of that, and I don't want to go into the statement of the facts, but this is a case that arose quite a period of time before the indictment and the plea. I'm sure Your Honors have already noted that from the dates. There was a lot of negotiation in that process that ended up with the indictment in this case. At the time that this plea agreement was entered into, there was not any idea that there would be restitution because cleanup had already occurred. Mr. Calkins and Atron Corporation had already paid for that cleanup, and they had been sued by the Dermody Corporation and had assigned all insurance rights to the Dermody Corporation as part of their settlement. So given all of that, despite the fact that the language is in there in that last paragraph on page 6 of the excerpt, there had never been any discussions that there would be any claim for restitution. And, in fact, you can see We're looking at what is something of a contract, and there it is in it. Isn't restitution part of the sentence? That's a judgment of the court sentencing the defendant to so many months of incarceration and so much money. It is certainly a part of that, Your Honor. And the issue there was the specific wording in this, which is cleanup. It's not remediation and cleanup. It's cleanup. And I note for you that specific language. Because, and as I'm sure you noted in the excerpt to record, during the first sentencing hearing, in the sentencing hearing itself, I raised the objection to the fact that I had been handed documents from the health department and from EPA that I had never seen before, and that the government in their response to my objection says, we just got them too. So the fact is that we couldn't have anticipated those bills because we didn't know about them. Well, what did you think you were at the hearing? Did you think you were just going to argue that you pay zero? Or did you think it was just going to, you didn't think it was going to be $182,000? Or they asked for $400-something or whatever. That, Your Honor, what we expected to do was walk in there and say, Judge Hicks, restitution doesn't apply under the various statutes that are cited. The Federal Probation Act, the VWPA, the MVRA, and the guidelines, we were saying that those didn't apply, first of all. That was my first argument. I think I made that clear. And my second argument was that the specific cleanup had been paid for. Mr. Calkins had paid $10,000 to the State of Nevada Department of Environmental Protection. He had paid $9,000 to another company to clean up. He had accepted a judgment against him, stipulated, settled a case with Dermody. Okay. So my second argument I've already made, which is that, statutorily, there was not a basis for the judge to have actually awarded restitution, because none of those statutes apply. The only one that does apply is arguably the sentencing guidelines, as we know now, and what came up in the middle of this case is the sentencing guidelines, became non-mandatory, even though Booker doesn't affect, as this Court has already held, that Booker doesn't affect that part of it, it still makes the whole of the sentencing guidelines are still non-mandatory. So that's something that can be considered, but not, is not mandatory. Supervised release, the Elias case, and we argued, and as you can tell, I argued that quite a few times. Finally, the proof and the appropriateness of the restitution in this case, and I've talked about that. So I'll reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court. John Smeltzer for the United States. Let me start with the point on the waiver. And what we argue in our brief is that the defendant waived the right to appeal certain issues, but under this Court's case law, it doesn't apply to all issues. The one issue to which it does not apply is the issues whether there's statutory authority to impose a restitution award. You go to the statute. We rely on the Federal Probation Act. It's 18 United States Code section 3563B2, and it expressly states the Court may provide that the defendant make restitution to a victim of the offense under section 3556, which is the general restitution statute. And then it has a parenthetical, and it says, but not subject to the limitations of, and it cites two more statutory provisions, which are the Victim Witness Protection Act and the Mandatory Victim Restitution Act, which both apply to particular sets of statutes. And what that clearly says is under the authority to impose restitution as a matter of probation, it applies to all offenses. And it's not that authority is not limited to the particular offenses to which those other two statutes apply. This Court has recognized that in Elias. That's the only issue that's truly on appeal before this Court, and it's clearly foreclosed by this Court's precedent in Elias and by the plain language of the statute. But you agree that there is, under our law, there's a right to challenge on appeal the legal authority to impose restitution. Yes. There's no basis for that argument in this case. The authority is there. And setting aside those issues, whether it's waived or not, even if it's not waived, the only real issue is the question of was it an abuse of discretion for the Court to order the defendant to pay these particular cleanup costs in this case. And the only real issue was whether all the cleanup had been done in the first place or whether the additional expenses that the property was paid beyond the $9,000 that was initially paid by the Adron Corporation, whether that was part of the cleanup. Well, you didn't get everything we asked for either, did you? No. We asked for costs beyond cleanup costs. I'm just talking about the specific costs of cleanup, which was what he had agreed in his plea agreement to pay restitution for. And, of course, it's the only issue before the Court because the district court didn't order those other costs. But specifically with respect to the costs the district court did order, the argument was that those were somehow not required or they were something that Dermody properties did that didn't need to do. And that's the district court specifically found otherwise. And I draw the Court's attention to the record excerpts at page 153 at the restitution hearing where the Court specifically found there's nothing to suggest to the Court that Dermody properties had any real choice but to do exactly what it did relevant to this remediation. So we would find that the amount of $182,000, et cetera, is on the table for restitution. The only reason the district court didn't impose it at that point was because the district court in sua sponte raised this question under Booker as to whether Booker somehow foreclosed this. And, of course, this Court's precedent and the precedent of all the circuits to address it, and we're up to ten now, is that Booker does not affect, there is no Sixth Amendment right to have a jury find the facts underlying the restitution. Unless there are any others. Sotomayor And I suppose that that issue is here, too, right? However, what does it mean? Verrilli, That issue we actually would submit is waived. Because if you look at the, what the defendant agreed to, he agreed to pay. And if you'll read it, he said, The defendant agrees to the entry of a restitution order for the full amount of the victim's losses. At this time, the government is aware that the facility in which the defendant conducted the operations required remediation. And then it says, In such case, the defendant agrees that restitution is due to the owners of those facilities. Now, when the defendant signed this, he obviously understood that when he was pleading guilty, there wasn't a jury to follow that. This was a decision the Court was going to make, and it's clearly understood when the defendant understood the Court was going to find those facts. So even if somehow there was a jury right here, it's waived by him agreeing to let the Court. Sotomayor This isn't affected by any change in the law since? Verrilli, Well, the law didn't change. It never was anyway. Sotomayor I get very mixed up about what the status of the guidelines are under any. Verrilli, Right. But this is a discretionary award under 3563B. What the guidelines say is the Court shall, I mean, it states that the Court shall impose restitution subject to various conditions that then give the Court discretion. The Court in this case clearly recognized that it had discretion. So there's no question about, you know, did the Court misunderstand the authority that it was applying. There are no questions. Sotomayor Any further questions?   Verrilli, Thank you. Given that we're past the waiver issue, the question of remediation versus clean-up, and I just note that Judge Hicks in his order, of course, also didn't make it a term of probation. But I think I'll concede on behalf of Mr. Calkins that given the language at the sentencing hearing, I'm sure that that's what Mr. Calkins was referring to, that meant, despite the fact that he didn't put that in the order. I think that's a matter of semantics more than anything else. But I look at the case law that has especially been, I mean, both sides have used the same cases, citing different language from them. That's not a surprise to anybody here. But I look at cases like the U.S. v. Bustle case from 2005, where the restitution order was vacated, because there's a question about what actually happened in the case law versus what could have happened had the defendant not broken the law. And the problem with the order and the decision made by Judge Hicks in this is when he adds up the numbers, he doesn't tell us where those specifically come from. He mixes remediation and clean-up, so that we don't know whether some of that is the legal fees that would not have been provided in here. We don't know whether ten years of clean-up, I mean, ten years of air monitoring was included or not. And one thing I want to go back to is that the, specifically looking at Elias and the 2000 case, 2003 case of U.S. v. Grice, which is G-R-I-C-E, those cases all look at specific conduct that the defendant has admitted to. We were very, very careful in the plea agreement that he never, that Mr. Calkins never said, not on the record, not in any place during the course of this case, he never said that he disposed of this mercury on the outside of the building. And so, and there had been allegations that his brother, who was the confidential informant in this case, to strengthen his case, had dumped some mercury there. And there was some discussion about that. And, in fact, that's part of the negotiations in this case. Unfortunately, it was brother against brother at one point. But the point is, is that the allegations that were, that were proven to some extent against Mr. Calkins is that he had these containers of mercury there. Not that he ever dumped them, because those would be empty containers. He had full containers. Also, that there was an allegation that was unproven, that he had taken this mercury back to the same mine site and disposed of it there. Your time has almost expired. Is there something in a nutshell that you want to say that is so fundamentally unfair that happened to you in connection with this? Fundamentally, Your Honor, at the very least, we believe this case should be remanded for Judge Hicks to make specific findings about how he determined the amount, what that's based on. But we believe legally the basis is out there for the restitution itself. Thank you. Thank you.
judges: Schroeder, Noonan, Callahan